UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,          Case Number 18-20183
v.                                       Honorable David M. Lawson

THADDEUS WHITE, II,

          Defendant.
_____/

**ORDER DENYING MOTIONS FOR COMPASSIONATE RELEASE**

Defendant Thaddeus White has filed a motion, later amended, asking the Court to reduce his sentence to time served under the authority of the compassionate release provision of 18 U.S.C. 3582(c)(1)(A)(i), as amended by section 603(b)(1) of the First Step Act of 2018, Pub L. 115-391, 132 Stat. 5194, 5239.  White has served approximately 20 months of an 84-month prison sentence for distributing controlled substances.  He argues that a sentence reduction is justified by his medical condition (obesity) coupled with the threat of infection with the novel coronavirus in the congregant confinement of a prison setting.  The government concedes that White has shown extraordinary and compelling reasons for release, but it maintains that he would be a threat to public safety if released.  Although White's obesity coupled with the threat of a COVID-19 infection may amount to "extraordinary and compelling reasons [to] warrant such a reduction," as section 3582(c)(1)(A)(i) requires, consideration of the factors in 18 U.S.C. § 3553(a) do not favor early release.  Because White has not demonstrated that immediate release is appropriate or that he qualifies for release under any other provision of section 3582(c)(1), the motion will be denied.

I.

Defendant Thaddeus White pleaded guilty to conspiring to distribute and possess with intent to distribute controlled substances (cocaine and oxycodone).  On June 17, 2019, the Court

sentenced him to 84 months in prison to be followed by three years of supervised release. White surrendered to the custody of the Bureau of Prisons (BOP) on July 23, 2019, and he presently is confined at FCI Milan, in Michigan, which is a low-security facility that houses around 1,260 inmates. White presently has served approximately 20 months of his prison sentence. Public records of the BOP indicate that the defendant is scheduled to be released from prison on December 5, 2024. White is 28 years old.

On May 19, 2020, White submitted an administrative request for compassionate release, which the Warden at FCI Milan denied on June 23, 2020. On October 19, 2020, White filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018 (ECF No. 231), which he amended three days later. He also has filed a supplement to the motions and a reply to the government's response.

The most recent data disclosed by the BOP indicates that there are 30 active coronavirus cases among inmates and four among staff at the Milan facility. Also, 231 inmates and 75 staff previously were infected and now have recovered. Reports indicate that three inmates have died. *See* https://www.bop.gov/coronavirus/.

II.

As a general rule, "a federal court 'may not modify a term of imprisonment once it has been imposed.'" *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)). "But that rule comes with a few exceptions, one of which permits compassionate release." *Ibid.* "The request may come through a motion in federal court filed by the Director of the Bureau of Prisons. 18 U.S.C. § 3582(c)(1)(A). Or it may come through a motion filed by the inmate after he has 'fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the [prisoner]'s behalf' or after 'the lapse of 30 days from the receipt

of such a request by the warden of the [prisoner]'s facility, whichever is earlier.'" *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)).

Upon a proper motion via either avenue, the Court may, "[a]fter 'considering the factors set forth in section 3553(a) . . . reduce the prisoner's sentence if it finds that 'extraordinary and compelling reasons warrant such a reduction' or if the '[prisoner] is at least 70 years of age,' has 'served at least 30 years,' and meets certain other conditions." *Ibid.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i), (ii)). White relies on subparagraph (i) of the statute. Under that provision, the Court can order a reduction of a sentence, even to time served, by following a procedure that the court of appeals has distilled into three steps. *First*, consider whether "extraordinary and compelling reasons warrant such a reduction." *Second*, determine if the "reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Third*, "consider[] the factors set forth in section 3553(a) to the extent that they are applicable." *United States v. Ruffin*, 978 F.3d 1000, 1004-06 (6th Cir. 2020) (quoting 18 U.S.C. § 3582(c)(1)(A)).

The Sentencing Commission's policy statement to be considered under step two is found in U.S.S.G. § 1B1.13, which simply recites the statute. The commentary adds gloss, which does not have the force of law. *United States v. Havis*, 927 F.3d 382, 386 (6th Cir.), *reconsideration denied,* 929 F.3d 317 (6th Cir. 2019) (*en banc*) (holding that the "commentary has no independent legal force — it serves only to *interpret* the Guidelines' text, not to replace or modify it"). That has led the court of appeals in its evolving guidance on the subject to hold that district courts should dispense with step two when the motion for compassionate release comes from a prisoner and not the BOP. *United States v. Jones*, 980 F.3d 1098, 1109 (6th Cir. 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered

- 3 -

§ 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)).

More recently, the court of appeals took the explanation a step further. In *United States v. Elias*, --- F.3d ---, No. 20-3654, 2021 WL 50169 (6th Cir. Jan. 6, 2021), the court ascribed Congress's amendment of section 3582(c)(1) to the BOP's "rare[]" exercise of its power to move for sentence reductions, that "the program was plagued by mismanagement," and that "the BOP 'ha[d] no timeliness standards for reviewing . . . requests.'" 2021 WL 50169 at *1 (quoting *United States v. Brooker*, 976 F.3d 228, 231-32 (2d Cir. 2020)). It reaffirmed *Jones*'s holding "that § 1B1.13 is not an applicable policy statement for compassionate-release motions brought directly by inmates, and so district courts need not consider it when ruling on those motions." *Id.* at *2. It then held that "in the absence of an applicable policy statement for inmate-filed compassionate-release motions, district courts have discretion to define 'extraordinary and compelling' on their own initiative." *Ibid.*

The government filed a supplemental brief in which it disagreed with this holding in *Jones*, called the decision "incorrect," labeled that holding "*dicta*," and urged this Court not to follow it. The *Jones* court did not see its decision that way, concluding that the application of section 3582(c)(1)(A) requires a sequential analysis, with consideration of the 3553(a) factors coming last in the sequence. *Jones*, 980 F. 3d at 1106 (reiterating that "a district court must make the two requisite 'find[ings]' before weighing the applicable § 3553(a) factors") (citing *Ruffin*, 978 F.3d at 1003–06). Because the district court did not address the Sentencing Commission's policy statement in U.S.S.G. § 1B1.13, the court of appeals held that it had to decide whether "the district court improperly refuse[d] to consider § 1B1.13 per the second step of § 3582(c)(1)(A)'s test." *Id.* at 1108. That holding was necessary to the decision of the case. The government may not like the

*Jones* court's answer to the question it posed, but calling it *dictum* misrepresents that holding in that case. The Court called out the government for promoting that same misrepresentation in another case. *See United States v. Terrell White*, --- F. Supp. 3d. ---, No. 18-20183, 2020 WL 7240904, at *2 (E.D. Mich. Dec. 9, 2020). And the Sixth Circuit has since reaffirmed its holding in *Jones*, as noted above, in *Elias*, 2021 WL 50169, at *2. Yet the government has neither withdrawn its supplemental brief nor sought to correct its arguments to the governing circuit law. And so the Court must again point out that "[e]thical lapses by the Executive Branch like this do not advance the cause of justice, irrespective of the underlying merits of the motion." *White*, 2020 WL 7240904, at *2.

A.

The government concedes that the request for release has been properly exhausted, so that threshold requirement for relief has been satisfied.

B.

Addressing the first element — extraordinary and compelling reasons — White argues that his medical conditions expose him to an elevated risk of complications from the highly-contagious novel coronavirus. In *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody]), or where he does *not* have COVID-19 (because [other] medical issues put [him or her] at risk of contracting the virus)." *Jones*, 980 F.3d at 1106 n.6.

The defendant is justifiably concerned about the health risks posed by his incarceration. "The COVID-19 virus is highly infectious and can be transmitted easily from person to person. COVID-19 fatality rates increase with age and underlying health conditions such as cardiovascular

disease, respiratory disease, diabetes, and immune compromise. If contracted, COVID-19 can cause severe complications and death. . . . [T]he Centers for Disease Control and Prevention ("CDC") recommends preventative measures to decrease transmission such as physical distancing, mask wearing, and increasing focus on personal hygiene such as additional hand washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). "The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration." *United States v. Ortiz*, No. 16-439, 2020 WL 3640582, at *2 (S.D.N.Y. July 6, 2020).

Moreover, "the crowded nature of federal detention centers presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past months, numerous [federal] courts . . . have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of high-risk inmates serving federal sentences." *Ortiz*, 2020 WL 3640582, at *2 (collecting cases; footnotes omitted).

It is widely recognized and publicly acknowledged that persons with certain medical conditions face an increased risk of severe consequences from potential COVID-19 infection. *United States v. Lassiter*, No. 17-232, 2020 WL 3639988, at *4 (D. Md. July 6, 2020) ("The risk factors include age (over 65); lung disease; asthma; chronic kidney disease; serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.") (citing Coronavirus Disease 2019 (COVID-19), People Who Are at Risk for Severe Illness, Centers for Disease Control & Prevention (June 25, 2020), https://bit.ly/2WBcB16). The defendant's age (50) does not put him

in a high-risk category, but he correctly points out that another pertinent recognized risk factor — obesity (Body Mass Index greater than 30) — renders him medically vulnerable.

The government acknowledges that the defendant is severely obese. White stands at about 5'11" and his weight ranges from 282 to 310 pounds, meaning that his BMI ranged from 39 to 43. Medical Records, ECF No. 245, PageID.1636. Most recently, his BMI hovered around 43 in June 2020. *Id.* at PageID.1634    The CDC's guidelines advise that individuals who are severely obese (BMI of 40 or greater) are among those with the "strongest and most consistent evidence" of severe illness from COVID-19. *Scientific Evidence for Conditions that Increase Risk of Severe Illness*, Ctrs. for Disease Control and Prevention (Nov. 2, 2020), https://bit.ly/34aDRY6. The government concedes that "White has satisfied the first eligibility threshold for compassionate release during the pandemic," in light of "the heightened risk that Covid-19 poses to someone with morbid obesity." Response, ECF No. 243, PageID.1617.

C.

Despite the defendant's satisfactory showing of extraordinary medical risk, early release is not justified in this case because the relevant section 3553(a) factors weigh heavily against discharging him into the community.

The government insists that compliance with the Sentencing Commission's policy statement on compassionate release is mandatory, pointing to one line in section 1B1.13 that requires the prisoner to prove lack of dangerousness. That argument, however, is a dead letter after the Sixth Circuit's decision in *Jones*, 980 F.3d at 1109 ("Until the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion in the interim to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion.").

That is not to say that dangerousness is irrelevant. It is a factor incorporated in section 3553(a), which must be "consider[ed]" before release for extraordinary and compelling reasons may be allowed. *See* 18 U.S.C. § 3553(a)(2)(C) (requiring a sentencing court to consider "the need . . . to protect the public from further crimes of the defendant"). And any sentence reduction also must account for "the seriousness of the offense," the need "to promote respect for the law," and "afford adequate deterrence to criminal conduct." *Id.* § (2)(A), (C). These factors are to be considered together with the prisoner's circumstances to arrive at a conclusion that they are sufficiently extraordinary and compelling to justify a sentence reduction.

White's crime is serious. He played a key leadership role in a significant drug trafficking conspiracy, coordinating the distribution of over 100 kilograms of controlled substances, which included cocaine and opiates. He possessed firearms throughout the conspiracy and maintained multiple premises to evade police.

The Court determined at the time of sentencing that the 84-month prison sentence was necessary to achieve the goals of sentencing Congress identified in 18 U.S.C. § 3553(a), and one of those goals — protection of the public — was paramount in this case. Since his incarceration, White has received two disciplinary reports for disobeying orders and possessing a cell phone. The possession of a cellphone is particularly noteworthy because his drug trafficking organization continued to use a communal phone number to sell controlled substances after White was arrested. These and other factors, including multiple previous felony convictions for drug possession and receiving and concealing a stolen motor vehicle, led the BOP to give the defendant a "high" PATTERN score, indicating that he poses a high risk of recidivism. PATTERN Score, ECF No. 243-2, PageID.1628. Reducing White's sentence by nearly three-fourths of the original custodial term certainly would not promote respect for the law or provide a just punishment for the

defendant's crime. Nor would it serve as a significant deterrent to others; to the contrary, it severely would undermine the goals of both specific and general deterrence, which is of particular concern with a defendant who has demonstrated his enterprising resourcefulness in flouting the law.

Consideration of the factors in 18 U.S.C. § 3553(a) weighs heavily in this case against granting any reduction in sentence, and those factors foreclose relief, even in light of the outbreak of Covid-19 at FCI Milan. At age 28, the defendant is a young man, and aside from his obesity is in relatively good health. His obesity puts him at risk, but his conduct both leading to his indictment and afterward in prison cast grave doubt on his inclination to be law abiding and conform to the norms of society. On similar facts, notwithstanding an inmate's demonstration of elevated medical risk, this and other federal courts readily have denied compassionate release motions by defendants who were convicted of serious drug crimes and had served less than half of their custodial terms. *E.g.*, *United States v. Lamar*, No. 18-20183, 2020 WL 7319431, at *4 (E.D. Mich. Dec. 10, 2020); *United States v. White*, No. 18-20183, 2020 WL 7240904, at *4 (E.D. Mich. Dec. 9, 2020); *United States v. Douglas*, No. 16-20436, 2020 WL 7225773, at *4 (E.D. Mich. Dec. 7, 2020); *United States v. Benge*, No. 12-59, 2020 WL 5845892, at *4 (E.D. Ky. Oct. 1, 2020); *United States v. Myers*, No. 18-20633, 2020 WL 4934343, at *3 (E.D. Mich. Aug. 24, 2020). There are no facts apparent in this record suggesting that a different outcome is warranted here.

### III.

White has exhausted his administrative remedies. However, he has not demonstrated that compassionate release under 18 U.S.C. 3582(c)(1)(A)(i) is justified.

- 10 -

Accordingly, it is **ORDERED** that the defendant's motions for compassionate release (ECF No. 231, 234) are **DENIED**.

                                                          s/David M. Lawson
                                                          DAVID M. LAWSON
                                                          United States District Judge

Dated:   January 26, 2021